LEIGH M. CLARK, Retired Circuit Judge.
This appeal is from a judgment denying this appellant’s petition for writ of error coram nobis after an evidentiary hearing thereon. The ultimate relief sought by the petition was that the court “Vacate the sentence previously imposed upon Petitioner” when petitioner was convicted on September 15, 1981, of kidnapping in the first degree on a plea of guilty and sentenced to imprisonment for thirty-five years.
In the “STATEMENT OF THE ISSUES,” appellant narrows the controversy on appeal by asking whether “the court should have found the appellant guilty upon his plea of guilty when the colloquy between the court and appellant demon *913 strated defendant was not guilty of the crime of kidnapping in the first degree?”
The court reporter’s transcript of the hearing on defendant’s plea of guilty, at which defendant was represented by employed counsel, shows an extended colloquy among the trial judge, defendant and defendant’s attorney pertaining to defendant’s knowledge and understanding of his constitutional rights in defense of the indictment; at that hearing defendant acknowledged in writing over his signature that he understood his essential constitutional rights and that the lowest and highest punishment for kidnapping in the first degree was “ten yrs. to Life.” The record shows also that his attorney at the time executed a declaration showing that he had explained to the defendant and that “to the best of my [his] knowledge and belief, the defendant understands the matter set forth in his declaration” and that the attorney recommended to the court that the court accept the defendant’s plea of guilty.
In contending that the colloquy at the hearing on the plea of guilty failed to show that defendant was guilty of the crime of kidnapping in the first degree, appellant’s attorney emphasizes the language of our Criminal Code Section 13A-6-43, Code of 1975, in particular part as follows:
“(a) A person commits the crime of kidnapping in the first degree if he abducts another person with intent to:

“(4) Inflict physical injury upon him, or to violate or abuse him sexually;

“(b) A person does not commit the crime of kidnapping in the first degree if he voluntarily releases the victim alive, and not suffering from serious physical injury, in a safe place prior to apprehension. The burden of injecting the issue of voluntary safe release is on the defendant, but this does not shift the burden of proof. This subsection does not apply to a prosecution for or preclude a conviction of kidnapping in the second degree or any other crime.”
We quote, from the court reporter’s transcript, part of the colloquy among the judge, defendant and defendant’s attorney as to what occurred between defendant and the alleged victim of the kidnapping, as follows:
“THE COURT: I don’t think you understand what the Court asked. Tell me what happened. You said you are guilty of it?
“MR. TAYLOR: Yes, sir.
“THE COURT: Go ahead and tell where you first saw her that day.
“MR. TAYLOR: That morning.
“THE COURT: Where did you see her at?
“MR. TAYLOR: Before she got on the bus.
“THE COURT: Where did you pick her up later on at?
“MR. TAYLOR: Chaney’s Chapel at Dutton.
“THE COURT: Is that a church?
“MR. TAYLOR: Yes, sir; down at the grave yard.

“THE COURT: What did y’all do after you got her in the trunk of the car?
“MR. TAYLOR: I covered her up and took off.
“THE COURT: Where did you go to?
“MR. TAYLOR: Down toward the bluff road on Bluff Road and turned off an old abandoned dump.
“THE COURT: And you stopped down there?
“MR. TAYLOR: Yes, sir.
“THE COURT: What happened then?
“MR. TAYLOR: Then she got out; she just got out of the trunk.
“THE COURT: You let her out, did you not?
“MR. TAYLOR: Yes, sir.
“THE COURT: Just tell what happened then when you let her out of the trunk.
“MR. TAYLOR: Then she took her clothes off.
“THE COURT: You took them off or she did?
“MR. TAYLOR: No. She took them off.
*914 “THE COURT: Did you tell her to take them off?
“MR. TAYLOR: Yes, sir.
“THE COURT: And she took them off?
“MR. TAYLOR: Yes, sir.
“THE COURT: Then what happened?
‘MR. TAYLOR: Then just rape.
“THE COURT: You knew her age at that time?
“MR. TAYLOR: Yes, sir.
“THE COURT: What was her age?
“MR. TAYLOR: 12.
“THE COURT: How long had you been knowing her?
“MR. TAYLOR: Ever since I was 5 or 6. I was about 6.
“THE COURT: Let me ask you this? Have you conferred with and advised your attorney concerning the facts of this case and his rights in the case?
“MR. DAWSON [Defendant’s attorney]: Yes, sir.
“THE COURT: Do you recommend to the Court to accept the plea of guilty by the defendant?
“MR. DAWSON: Yes, sir.
“THE COURT: Let the record show that the Court finds that the defendant’s plea of guilty is voluntarily and understandingly made; is that right?
“MR. TAYLOR: Yes, sir.”
We agree with appellant’s counsel that the transcript of the hearing of defendant’s plea of guilty shows that he “voluntarily releases [released] the victim alive ... pri- or to apprehension,” which constitutes a part of the first sentence of § 13A-6-43(b) preclusive of guilt of kidnapping in the first degree, but we are in disagreement with appellant as to his contention as to the remainder of the preclusive sentence. In our opinion, the rape by defendant of the twelve-year-old constituted “serious physical injury” to her and she was not left in a safe place. This conclusion of ours is strengthened by the concluding part of the testimony of Richard Nolan Taylor on the hearing of his petition for writ of error coram nobis:
“BY MR. DUKE [Attorney for the State]:
“Q. Wasn’t it at a garbage-dump type place there on the bluff?
“A. From what my Mom and everybody told me, it was just a little old road on the side where people had been dumping things, you know. I don’t know if it was called a dump or not.
“Q. What time did you leave her out there?
“A. I don’t remember.
“Q. Was she conscious or unconscious when you left her?
“A. Conscious.
“Q. Was she clothed?
“A. I don’t remember if she was or not. “Q. You don’t remember if she had any clothes on or not?
“A. No.
“Q. Do you remember if her hands were tied or her legs?
“A. I think so.
“Q. You remember that her hands and legs were tied when you left?
“A. I think so.”
In our opinion, the judgment of the trial court in denying after a hearing the petition for writ of error coram nobis was correct and should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.